Madam Clerk, please call forth the case. 115-1532 Armstrong Service v. Governor House Council, you may approach and proceed. Good morning, Your Honors. May it please the Court, I am Ivan Yadis on behalf of Armstrong Service, the employer in this matter. As we have argued in our briefs, Your Honors, it is our position that the Commission's decision that the employee sustained an injury arising out of and in the course of his employment was against the manifest way of the evidence. I'm not going to rehash the evidence that was presented that we've discussed in the briefs. What I'd like to discuss this morning, Your Honors, is the dangerous precedence that the Commissioners have taken in this case. In the sense that any individual that at the end of a work day says, man, it was a rough one today, back hurts or my shoulder hurts or my knee hurts. The burden is now on the employer to jump to a conclusion that, well, this person must have a workers' compensation case. I better fill out the paperwork and move on. The burden is not on the employer. The burden is on the employee. In this case, the evidence clearly shows that the petitioner did not meet the burden of proof in this case. The totality of the evidence supported the arbitrator's decision in finding that the petitioner in this case, Mr. Robert Wallace, was not a credible witness. And the testimony of Mr. Gere and Mr. Rodriguez, who testified on behalf of Armstrong Service in conjunction with the crew statement, and well, as petitioner of his own testimony, when he was asked twice, did you hurt yourself at work, and he says no. Well, let's hang on a second. What did Rodriguez really say completely, not only Didn't Rodriguez testify or admit on cross that the claimant said that he had hurt his back when lifting the bags of salt? Didn't he admit that? Yes. And isn't that his supervisor? Well, he said that he had back pain, and he did not fill out the paperwork. Right, but he said, quote, unquote, claimant said he had hurt his back lifting the bags of salt. Now, doesn't that sound like he's working? Isn't that what he does? That's correct, but the question then becomes the bags that he claims to have lifted, and that was an issue that was presented at arbitration. The fact that he testified to X amount of bags when the supervisor both testified that there's technically no way that that amount of bags could have been deposited in the brine tank in the manner that Mr. Wallace claimed. So again, that's a Well, how do we know? I mean, the commission obviously believed the claimant, didn't it? Excuse me, Your Honor? The commission obviously believed the claimant, didn't it? They took that, with all due respect to Commissioners Carroll and Brannon, they heard the case from. They said, well, you misunderstood the question. How easy of a question is it that you hurt yourself at work? No. Is this a work accident? No. With all due respect, Your Honor, this is a case where how much more evidence do we need to present at arbitration to meet our burden in defending a case? The evidence that was presented was overwhelming in favor of the employer. It's our position in the case, and in fact, the arbitrator viewed it that way. Commissioner Lamborn in dissent thought that the arbitrator's analysis of the evidence and interpreting of the credibility of the witnesses was good reasoning, and we would maintain that the commission's decision in overturning the arbitrator's decision 2-1, again, was against the manifest way of the evidence. Thank you, Your Honor. Thank you, Counsel. We will have time to reply. Counsel, you may respond. Good morning. May it please the Court. Counsel Joshua Rudolph on behalf of the appellee, Robert Wallace. Essentially what's being presented before you today is they're asking you to re-weigh the evidence, and that's not within the province of this Court to do. That's done by the trier of fact, the commission. The commission went through all of the evidence in the record, and they found and found twice that the petitioner was expressly credible. That's on page 2 of the second full paragraph. It states twice the petitioner was credible in his testimony. So there are some inconsistencies, I think, extensively between what the claimant had said initially, what he said later. I mean, you can make an argument as he does. There was some contradictions. What do the medical records support? Do the medical records support the claimant's position? All the contemporaneous medical records in this case support the claimant's position. You have Dr. Niehaus, who's the first person who saw Mr. Wallace after the accident three days later, who states felt pain in his back after lifting frequent 40-pound bags of salt on Sunday night, which comports directly with the petitioner's testimony and with the evidence adduced at trial. Then you have Dr. Todd Sinai, chiropractor, May 18, 2012, injured while lifting 40-pound bags of salt into a tank. Chiropractor refers him to Dr. Martin Herman, a neurosurgeon. Dr. Herman, June 26, 2012, injured back on 4-15-2014 lifting salt into a brine tank. You even have Dr. Zelby, the respondent's own IME doctor, who writes down a history consistent with the petitioner's testimony and all of the contemporaneous medical records, which is my point here that the commission viewed the testimony not only in a vacuum, but they looked at it in congruence with the rest of the evidence at trial. Well, opposing counsel is saying that the statements made by the supervisor and the other manager closest in time to the alleged incident were not that strong. Do you want to answer that? Well, we have two statements that we're discussing. Because we have all of these intake histories. How many days after the incident? Starting three days after. Okay. We have two statements that we'll be looking at. Statement number one, which will be from Mr. Wallace to Mr. Rodriguez, on the 16th, the day of the accident, where he said, man, my back's hurting. And he also mentioned that he was lifting bags of salt. We not only have that from Mr. Wallace's testimony, but we have that from Mr. Rodriguez's testimony, and even the ASI crew statement that responded, produced at trial, which is the statement of Mr. Rodriguez. I worked the day shift, 6 a.m. to 6 p.m. Monday morning, April 16th, I relieved Bob at 5.30 a.m. During the shift change, Bob complained that his back was hurting and mentioned he loaded salt into the water softener tank. That's the same day of the accident. That's consistent with the petitioner's testimony, and, again, only viewing these statements, they comport with the rest of the evidence. Now, Rodriguez would have no ostensible reason to support the claimant, would he? I would say not. If anything, he's still the company's fund. Correct. Was there a direct question? Did you hurt yourself at work? There was a direct question of did you have an accident at work. The petitioner explained and says, did I fall off a ladder? Did I slip and fall? He was doing his normal customary routine. So we want to make a semantics argument here. It doesn't fly. You have to look at the rest of the evidence. You can't look at one statement in a vacuum. You have to look how it best comports with the rest of the evidence, which is credible in this case. Do you know what was clear in the record as to what the question was? Because in reading the arbitrator's findings and then also reading from the transcript itself, the claimant's testimony, what was the question that David Geyer asked? Well, it's a little bit hazy. David Geyer says that I asked him, did you get hurt at work? The petitioner takes it as did you have an accident at work? So there's two different interpretations. I don't know without a recording that we can know verbatim what the exact question was. But, again, we cannot look at this statement in a vacuum. He reported to Ricky Rodriguez that day that I hurt my back. I was lifting salt into the tanks. Again, even if you were to take Mr. Geer, he also still works for the respondent. So there could be potential bias there. Mr. Rodriguez would have no reason to lie, and he reported it exactly as it was stated, which is exactly what was confirmed by the petitioner and Mr. Rodriguez at trial and also within this statement. These are all consistent. Now, the respondent does cite a couple of cases in their brief, which I would like to go through briefly the two main ones. Rockford Clush is the first case that they cite from 1967, the Illinois Supreme Court. Again, during that time, any appeal taken from the Industrial Commission went straight to the Supreme Court. We would generally claim an injury to the back and legs, went to a company nurse for an eye issue, but never mentioned anything about the back and legs. Then they fill out a form for non-occupational disability and put directly on that form, this is not a work-related accident or injury. The Supreme Court found there was a failure of proof in that case. In this case, we have contemporaneous medical records that don't indicate anything other than this mechanism of injury, this accident, this time doing these things. We also have the petitioner's testimony and the statements that we just went over. Rockford Clush is easily distinguishable from this case. The second case they rely on, Corn Products Refining. This case, I would ask that you go through and read it. It reads almost like an Abbott and Costello routine. It is laughably distinguishable from this case. We have a gentleman who testified in that case from 1955, again, that he fell off a ladder and the two witnesses saw him fall off this ladder. Unfortunately, the witnesses were dead and couldn't testify at trial to bolster his testimony. Then he says, after the accident, I went to go to the company nurse and I saw the superintendent, and I told the superintendent, look, I'm just going to go to my doctor for this injury. The superintendent testified at trial. I never had a conversation with him. Directly impeached by the superintendent. Then you have a form that was filled out, an accident form, and he says, my doctor filled this out for me, and it says it's a work accident. The doctor was called to testify at trial. I never filled that out. All right. So in short, what you're saying is this case is distinguishable because there, there was nothing but the claimant's uncorroborated testimony. Here you point to Rodriguez, which does support the claimant's position. When Rodriguez admits he said he hurt his back lifting the bags. Exactly. There was nothing like that in the cases that you cited, correct? Correct. Okay. There's nothing but the petitioner's testimony in those previous cases. That's why those cases are easily distinguishable from the facts at hand here. Now, the respondent does make another argument in the brief that I'd like to address, which is saying that Dr. Zell being the independent medical evaluator's opinion, it's unclear whether it's an attempt to impeach the petitioner's testimony or impeach the petitioner's condition, which, again, as we all know, the commission is in the best position, and they will weigh the evidence in conflicting medical evidence. Everything will be resolved there. It's a trial. And as obvious as one thing, Herman's on the other side, so that, you know, that's up to the commission. Exactly. And there was depositions taken. The foundation was laid for both to be experts, and they relied upon Dr. Herman. They found Dr. Herman to be expressly credible. Okay? As Justice Hoffman has said in numerous of my arguments before this Court, as long as the doctors aren't reading chicken entrails, the decision's going to stand. That quote stands out in your mind for some reason? It certainly does. For these reasons, the medical evidence, the petitioner's testimony, the crew's statement, all of these support a compensable accident. All of these take place contemporaneously with the actual accident. There's no dispute that the petitioner's job requirements required him to lift bags of salt into a grind tank when necessary. He was doing this. That's exactly what happened. Again, they're asking you to re-weigh this evidence. I'm imploring you that that's been done, and this decision has to stand on its merits. Thank you. Thank you, counsel. Counsel, you have time in reply. Your Honor, I would just ask that your Honor, excuse me, my opposing counsel's statement about we can't take it in a vacuum, we're not asking. We're not asking for that here. In fact, that's why we had two witnesses testify. We had Dr. Zellwey's testimony. Quite frankly, his statement responding to did you hurt yourself at work? No. I hope the counsel did a better job of reporting the accident here today than Mr. Wallace did when his supervisor asked him to charge us off of work. Your Honor, we ask that this decision be reversed. Thank you. Thank you, counsel, both for your arguments in this matter. This morning you'll be taken under advisement, and a written disposition shall issue.